IN THE UNITED STATES DISTRICT COURT
EASTERN DIVISION OF MISSOURI

KEVIN WHITE,
    DEFENDANT,

V.

UNITED STATES OF AMERICA,
    PLAINTIFF,

Case No. 4:11-CR-00196-JCH



RECEIVED
AUG 30 2019
BY MAIL

## MOTION FOR LACK OF JURISDICTION

    Comes Now, Kevin White, herein as 'White' or Movant, a Pro Se litigant in the above style-cause respectfully submitting his Motion, to vacate sentence for the **LACK OF JURISDICTION**, based on the fact, where no Grand Jury was presented probable cause to indict according to Due Process of Law, resulting in an illegal sentence of White. Furthermore, where no criminal complaint specifically against White, presented to an Grand Jury, alleging any charges, elements or crimes against the nited States. White's Motion for Lack of Jurisdiction is supported by 'actual' facts. See Exhibit #1.

    Movant, further requests this Court evaluate his Pro Se motion liberally, as required by the Supreme Court ruling in <u>Haines v. Kerner</u>, 404 US 519, 92 S. Ct. 594, <u>30 L. Ed. 2d 652</u> (1972), where is held that a Pro Se litigant is held to a less stringent standard than formal pleadings drafted by lawyers: If the Court can reasonably read the pleading to state a claim on which the litigant could prevail, it should do so despite a failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction or litigant's unfamiliarity with pleading requirements.

## REASON TO VACATE SENTENCE

    On December 12, 2012, the District Court sentences Kevin White, to a 188 months imprisonment, based on an invalid indictment. Which fails on all the essential elements: First, the indictment presented to the District Court and the Defendant was not the indictment, if any, that the Grand Jury approved. This was admitted by Prosecutor Kenneth R. Tihen, admits alteration of a drafting alleged indictment. See (EHT) pg. 17. At no point did the Government present the

1

actual true bill, if any exists from the Grand Jury.

Second, the indictment presented does not contain the rules requirement of signature by the attorney for the Government, Fed. R. Crim. P 7(c)(1)(B), nor a signature by a member of the Grand Jury. See 4:11-CR-00196.

Third, it is the essential points these missing elements, where this sentence is "illegal" in the sense that the Court goes beyond it's authority by acting without Jurisdiction. Kevin White, Motion to Vacate Sentence is supported by the record.

## FACTS

Several Pre-Trial Motions were filed by White, and all were denied. See Pre-Trial Motions filed by White.

1. Motion to sever Doc. #234

2. Motion for Disclosure and Inspection of Grand Jury Transcripts, Doc. #236

3. Motion for Bill of Particulars Doc. #228

4. Motion to Dismiss Indictment / Counts Doc. #229

5. Motion to Suppress Evidence Doc. #232

6. See also, Evidentiary Hearing Transcripts Exhibit #1

Do to the unprofessional representation by White's former attorney's, not citing any case law in neither Pre-Trial motion, so that Prosecution, can advance their case. White, also filed a §2241 §1651 Motion pursuant to 28 U.S.C., in the Seventh Circuit, which the Government fails to respond to the allegations. See Docket for Case #1:16-CV-01342-JES. The District Court denied Petition, saying no Jurisdiction. Petitioner, in now working on his Writ before the Supreme Court, due to the denial of his **EN BANC** in the Appellant Court, Case No. 18-1278.

## REASON FOR GRANTING MOTION

WHITE contends, primarily, that his 5th Amendment rights were violated where there is no proof of an indictment being returned by a grand jury specifically bearing charges attributed to him. WHITE asserts that Prosecution fraudulently misled District Court by presenting alleged frand jury findings against WHITE that were actually presented against his primary codefendants, Viconto Johnson and Quentin Thompson, thus violating Due Process, where there was no probable cause to indict WHITE.

At best, it may be possible that a grand jury voted to 'present' charges against WHITE, and an indictment was drafted by a member of the U.S. Attorney's office of the 8th District at St. Louis, which was signed by the jury foreman without the Grand Jury as a body considering the case further. Compare **U.S.- v- Cotton,** 2013 U.S. Dist. LEXIS 180178 (8th Cir.), citing **Gaither -v- U.S.,** 413 F.2d 1061, 134 U.S.APP. D.C. 154 (D.C.Cir. 1969), where the indictment was defective because the grand jury voted only to "present" the defendants with the charge of grand larceny, but did not "pass on the actual terms of an indictment," which were drafted by the prosecutor and signed by the foreperson. Id. at **Gaither,** 1071.

Unlike **Cotton,** WHITE can substantiate suggestions that there was prosecutorial misconduct and due process issues showing a failure by all jurors to vote on the counts of the indictment pertaining to him in his case. If convened at all, the prosecution in WHITE's case, specifically U.S. Attorney Kenneth R. Tihen, aided by his assistant, Attorney Tiffany G. Becker, misled the Grand Jury on crucial matters of law, and thereby improperly obtained an indictment, resulting in prosecutorial misconduct. Prosecutorial misconduct can result in the reversal of conviction if (1) the prosecutor's conduct was improper, and (2) the conduct prejudicially affected WHITE's substantial rights. Cf. **U.S. -v-Davis,** 534 F.3d 903,914 (8th Cir. 2008). Such conduct led to a creative construction of the Indictment by Prosecution to present its own take

on what it wanted to charge White with criminally.

The 5th Amendment guarantees the right to be indicted by grand jury, and its double jeopardy bar and 6th Amendment guarantee that a defendant be informed of charges against him establishes no minimum requirements for an indictment:

> [An] Indictment adequately apprise[s] defendant of charges against him so that he can prepare his defense, and furthermore it must establish record that shows when defense of double jeopardy may be available to the defense in the event future proceedings are brought against him. U.S.C.A. Const. Amend. 5, 6.

The very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy of offenses charged by a group of his fellow citizens acting independantly of either prosecuting attorney or judge. This purpose is defeated by a device or method which subjects the defendant to prosecution for an act which the grand jury did not charge. Compare **Stirone -v- U.S.**, 361 US 212, 80 S.Ct. 270, 4 L.Ed.2d 252, 253 (1960).

WHITE's contention is based on information, or the lack thereof, of certain points of Record. Where in the Eighth District original indictments are not accessible to the public, and providing one would violate Local Rule 6.1, D.N.D. Crim.L.R, WHITE still contends the Indictment used against him violated F.R.Crim.P. 6(c) and 7(c), where the photocopy of the original Indictment in his case does not bear the signatures of the Grand Jury foreperson, or an attorney for the Government. Compare **U.S. -V- Mariner**, 2012 U.S.Dist. LEXIS 180447 (8th Cir.).

This point is significant because WHITE's photocopy bears the court clerk's filing date stamp, which is not in original ink on the copy, yet WHITE's copy does not bear any signatures. To argue that the lack of signatures on a copy does not mean the original does not have them would mean that the document could be copied and filed without signatures, only for the signatures to be added at a later, more convenient time. That is not in accordance with due process.

As shown in **Mariner**, supra, Rule 6(c) may not require the signature of

4

the foreman to appear on the copy of the Indictment placed in a public file, but the copy should reflect the Indictment that was examined by the clerk prior to filing and found to have been signed. Id. And, more egregious to such argument, there is no '/s/' on WHITE's photocopy of the Indictment to indicate or suggest the Indictment was electronically filed, thus reflecting the foreperson had indeed signed the actual Indictment.

And what of Rule 7(c), which provides the indictment "must be signed by an attorney for the government,"? **Mariner**, Id. Is this reason alone for dismissal of the alleged indictment against WHITE?

Though **Mariner** points out missing signatures of grand jury forepersons and government attorneys would not render the indictment fatally defective nor deprive a district court of jurisdiction (id.), there still is the question of whether that theory is valid in WHITE's case, where the challenge is not towards a defective indictment, but instead a lack of one. The question goes further where no entry appears on the Court's Docket prior to its clerk filing the Indictment, for no 'complaint' existed towards WHITE prior to its filing.

**Mariner** summarizes even if the indictment is missing both the foreperson and the government attorney's signatures it would not render the indictment fatally defective nor deprive the district court of jurisdiction, but WHITE's argument differs considerably from **Mariner's** in that WHITE asserts there was no initial indictment found by a grand jury against him.

WHITE does not argue a defective indictment as found in **U.S. -v- Cotton**, 535 US 625, 629-31, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002), where it was ruled defects in indictments are not jurisdictional and don't affect a court's jurisdiction to hear it. Nor is WHITE's argument like that found in **Bank of Nova Scotial -v- U.S.**, 487 US 250, 254, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988), where it further ruled errors in grand jury proceedings generally don't warrant dismissal of indictments unless the errors prejudice the defendant. WHITE's argument is a jurisdictional question in the sense that if no grand jury

5

determined probable cause to indict him there could be not indictment to proceed further, and he should not stand convicted of a crime. And Prosecution in WHITE's case did not want to relent because, even though no evidence presentable to a grand jury could support it, they felt he was a part of Johnson and Thompson's conspiracy.

"Whether to prosecute and what charges to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion." **U.S. -v- Blair**, 2011 U.S. DIST. LEXIS 05745 (8th Cir.)(internal cite and quotations omitted). However, the content of the charge, as well as the decision to charge at all, is entirely up to the Grand Jury -- subject to its popular veto, as it were. Cf. **Gaither -v- U.S.**, 413 F.2d 1061 (D.C. Cir. 1969)(internal cite omitted).

Where no probable cause was shown, WHITE is of the impression that no indictment was returned against him, initially, yet it is obvious District Court believed one was returned, as Prosecution wanted the Court to. WHITE impresses upon the Court the fact that overlapping investigations over a six month period failed to produce more than a circumstantial relationship between WHITE and his alleged codefendants, yet Prosecution had no issue with pursuing an indictment against him. Such conduct was unfair.

What resulted was an amended indictment, for Prosecution felt WHITE was not going to be held accountable for what they deemed him guilty of, and thus provided a 'Manner and Means of Conspiracy' segment to the Indictment in an attempt to circumvent the Grand Jury and make him 'as culpable' of the drug enterprise as the aforementioned primary defendants, for whom the Indictment was returned. This was unfair and inappropriate.

WHITE's contention is supported by the Record, where at a pre-trial evidentiary probable cause hearing [herein as Eventiary Hearing Transcript (EHT.)] WHITE's defense counsel tried to determine probable cause, while Prosecution tried to advance their case further. WHITE regards the testimony

6

of Task Force Officer Lang, who ultimately admits several times the fact that there wasn't enough probable cause evidence to proceed with indictment against

WHITE: Q. And you said in the affidavit that you didn't have probable cause, at least as of March the 16th, to intercept or to -- to apply for the search warrant. Right? And that's why you needed the wiretap. [EHT.156, Ins.16-20].

A. Based on the information I had, I didn't believe I did. [EHT.156, In.20]

Indeed, Count Four only describes by the Grand Jury the conspiratorial intent to "conduct financial transactions" which "involved the proceeds of a specified unlawful activity", for which there was no probable cause to conclude. Where there was two distinct investigations existing simultaneously within the same office, "another group" compiled its own information. It was that information which was allegedly presented to a Grand Jury, because it was Agent Stroop who allegedly appeared before a Grand Jury, not Officer Lang, who was the head co-agent in the investigation of WHITE. And it was Lang who testified that Stroop's investigation was "unrelated", yet it seems they were consolidated once the Indictment was presented. And that falls on the responsibility of Prosecution, who ran the task of presenting their case to a Grand Jury.

It is the lack of probable cause which makes it unlikely that anything was presented to a Grand Jury regarding WHITE, whereas it was seemingly enough to present towards Thompson and Johnson. If in fact Tamecka Davis was courier for Thompson and Johnson's organization, she never stated under questioning that WHITE told her he'd loaded money or drugs into the car, and nothing was alleged to taken to Arizona. Compare EHT.156, In.25 to EHT.157, In.25]. Yet Prosecution presented it in the Indictment as factual events that WHITE was alleged, by Ms. Davis. But it is important to note that Davis' 'services' as courier were not indicated as 'payment' for the vehicle, U.S. currency was. Yet Prosecution alleged to a Grand Jury that Davis 'worked' for WHITE, not the primaries of the investigation or the Indictment.

And therein lies the question of the Indictment in relation to WHITE, or

7

the validity of the Indictment as a whole. Only in exceptional circumstances may a court consider a challenge to an indictment in a post-conviction proceeding [**Mariner**, supra], but it seems as if WHITE's circumstances are exceptional where no probable cause existed to indict.

The Fifth Amendment to the U.S. Constitution and F.R.Crim.P 7(a)(1) require that felonies be charged by grand jury indictment. The primary purpose of an indictment are to inform the defendant of the charges he must defend against and to allow the defendant to plead double jeopardy to any future prosecution. **U.S. -v- Allen**, 406 F.3d 940, 946 (8th Cir. 2005); **Mariner**, supra. WHITE avers the procedure used in his case to indict him was improper, and a grand jury might have found differently had the correct procedure been used.

A defendant has a right to have the facts that make up the essential elements of an offense decided by a jury. Cf. **Patterson -v- New York**, 432 US 197, 210, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). "An indictment must fairly state all the essential elements of the offense if it is to be sufficient." **U.S. -v- Camp**, 541 F.2d 737 (8th Cir. 1976).

WHITE contends where there was no probable cause to arrest him there should have been no probable cause before a grand jury to indict him. The indictment in WHITE's case was *not* returned on the basis of evidence which would've arisen from probable cause, and the Grand Jury portion of the Indictment does not reflect the offense for which he was ultimately convicted. And for what was charged, a true bill was not returned, resulting in jurisdictional error. Since jurisdictional error implicates a court's power to adjudicate the matter before it, the doctrine of procedural default does not apply. Cf. **Louisville & Nashville Railroad Co. -v- Mottley**, 211 US 149, 152, 29 S.Ct. 42, 53 L.Ed.126 (1908). Jurisdictional error is by its nature of such "fundamental character" as to render proceedings "irregular and invalid." **U.S. -v- Morgan**, 346 US 502, 509 n.15, 74 S.Ct. 247, 98 L.Ed. 248 (1954).

For an indictment to be a 'true bill' it would not only have to bear the

8

signiatures of the grand jury foreman and government attorney spoken of in **Mariner**, supra, but it would also have to conform to Due Process requirements. To be informed of the crime charged <u>necessarily</u> includes notice of <u>both</u> conduct forbidden <u>and</u> penalty prescribed. **U.S. -v- Evans, 333 US 483, 485,** 68 S.Ct.634, 92 L.Ed. 823 (1948). Due Process entitles movant to notice of a statute's maximum punishment. **U.S. -v- Carrozza**, 4 F.3d 70, <u>81</u> (1st Cir. 1993), cert. denied, **511 US 1069** (1994).

WHITE's alleged Indictment gives a general overall conspiracy count to all defendants, then charges each specifically in one of the remaining three counts of a 4-count indictment. In subsection 'A.' of Conspiracy Count 1, it indicates what the Grand Jury charges, which is basically a Title 21 U.S.C. § 841(a)(1) violation, alleging he conspired with "each other and other persons known and unknown". In subsection 'B.' Prosecution tried to insert WHITE in the conspiracy by alleging he served as a narcotics distributor and coordinator of drug transportation, but nothing at the Evidentiary Hearing indicated such actions. The important part is subsection 'B.' does not indicate that it is the findings of the Grand Jury, and at the Evidentiary Hearing the first thing AUSA Becker points out in Lang's examination is that "<u>we've</u> gone the extra length to actually <u>add</u> a Manner and Means which is <u>not</u> required.," indicating specifically that they were further defining WHITE's role. Compare EHT.17, Ins.5-10.

First, it is noted that in both counts for which WHITE was charged, no penalty is indicated. This violated WHITE's Due Process rights where "[a]lthough it is not likely that a criminal will carefully consider the text of the law before he murders or steals, it is reasonable that a fair warning should be given to the world in language that the common world will understand, of <u>what the law intends to do</u> if a certain line is passed. To make the warning fair, so far as possible the line should be clear." **McBoyle -v- U.S., 283 US 25,** 75 L.Ed. 816 (1931); **Planned Parenthood -v- Miller**, 860 F.Supp. 1409 (8th Cir. 1994).

9

Further, to permit a 'Manner and Means of the Conspiracy' to be <u>added</u> to an indictment with elements that were not a part of the Grand Jury's charge would be to allow the Grand Jury to indict with one crime in mind and allow the U.S. Attorney to prosecute by producing evidence of a different crime. Such impercision in a grand jury indictment cannot be permitted, yet that is what happened in WHITE's case.

The <u>Fifth Amendment</u> requires that a defendant be tried <u>only</u> on charges handed down by a grand jury and, thus, after an indictment has been returned, its charges may <u>not</u> be broadened through amendment <u>except</u> by a grand jury. See **U.S. -v- Clemente**, 22 F.3d 783 (8th Cir. 1994). Assuming, argumendo, that was not the point, and that only a self-authorized 'Manner and Means' subsection would suffice, this would forever exclude the use of elements found by a grand jury in <u>all</u> indictments, for there would be no reason or need for the Government to burden itself with the use of Grand Jury alleged elements in an indictment, just so long as a statute for the crime charged exist.

The Government could then say to the Grand Jury, "John Doe is charged with a drug distribution crime. The statute which governs this crime makes it a crime against the United States. We, the People, request that this grand jury return an indictment of Mr. Doe for the crime of drug distribution." This would, thus, do away with the long established principle of our criminal justice system that, after an indictment is returned, its charges may <u>not</u> be broadened by amendment, a principle that's withstood the test of time and should not be disputed here. Compare **Clemente**, supra, and its predecessor, **Es parte Bain**, 121 US 1, 7 S.Ct. 781 , <u>30  L.Ed. 849</u> (1887).

White asserts the 'Manner and Means' aspect of the Indictment aided in what could be conceived as a veriance as to what the Grand Jury may or may not have determined, and what the Government indicated as charged facts. A fatal variance denies a defendant fundamental guarantee because it destroys his right to be on  Notice of the charge brought in the indictment. See **U.S. -v- Peterman**, 841

10

F.2d 1474,1477 (10th Cir. 1988), cert. denied, **488 US 1004,** 109 S.Ct. 783, 102 L.Ed.2d 744 (1989).

WHITE contends the 'Manner and Means' clause was added by Prosecution once it was realized that were 'out of time' and about to be forced to return the confiscated property which was seized after the raiding of his Nazareth Hills residence. That property was to be returned to him unless charges were filed, which charges were filed, which charges were in the day it was to happen: May 19, 2011. It was the day WHITE was arrested, though the Government knew there was not enough evidence to charge WHITE with a drug distribution crime.

If, indeed, there was an underlying conspiracy, like providing drug dealers with the vehicles with concealed compartments, WHITE was not simply charged with that. The investigation was drug related, so the Government stayed with that and presented their case as such, knowing WHITE was a prior felon who would run too great a risk of going to trial with the vague concept of conspiracy to defend from.

Instead, WHITE was theoretically coerced into a plea agreement, because U.S. Attorney Tihen threatened him with a life sentence, using priors under Section 851 that also were debatable as to their validity. Surrounded by controversy, the previously-filed information related to those priors were dismissed as a condition of WHITE's Plea, but he wasn't aware of the fact that he would not have faced the enhancement anyway with a simple money laundering charge, for no evidence existed to convict him of an 841 drug offense. Had he known, WHITE may not have accepted the Plea, knowing he did not distribute drugs. But because no penalties appeared in each count of the Indictment, there was no way for WHITE to know he faced options as to his trial, plea, or punishment.

The general rule is that a valid guilty plea waives all non-jurisdictional defects. Stated differently, a valid guilty plea forecloses an attack on a conviction unless "on the face of the record the court has no power to enter

11

the conviction or impose the sentence." Walker -v- U.S., 115 F.3d 603, 604 (8th Cir. 1997). U.S. -v- Beck, 250 F.3d 1163, 1166 (8th Cir. 2001). But the lack of an indictment or failure to present an indictment in accordance to Due Process cannot be considered a non-jurisdictional matter.

Surely, without a Grand Jury Indictment specifically alleging in its charge the elements needed to prove the predicate crime against WHITE, a 'Manner and Means' clause should be void, where a liberally construed indictment is not "sufficient to identify the offense which the defendant conspired to commit." U.S. -v- Werme, 502 US 1092 (1992); Wong Tai -v- U.S., 273 US 77, 81 (1958). Where the Fifth Amendment provides the right to a grand jury indictment prior to trial, it is quite possible in WHITE's case that the grand jury believed only that he provided Ms. Davis with the opportunity to purchase a vehicle with a concealed compartment, which is not a crime.

The Sixth Amendment provides the right of an accused to be informed of the nature of the charge against him, and the Indictment against WHITE fails in that regard. The penalty is essential, yet it was not indicated sufficiently to put WHITE on notice as to what he faces. It is the punishment prescribed which makes an act a crime, not a mere interdiction of conduct without punishment. There is no better illustration of this principle than the opinion in Evans, 333 US 483, supra, where it indicates penalties are a pre-requisite of Notice. IF the Notice requirement of the Due Process Clause is not satisfied, the order is void. Cf. In re Wholesale, 759 F.2d 1440, 1448 (9th Cir. 1985). Put a better way, "[b]efore criminal liability may be imposed for violation of any penal law, due process requires 'fair warning ... of what the law intends'." U.S. -v- Lanier, 520 US 259, 137 L.Ed.2d 432 (1997).

WHITE's point of contention is the Record show a lack of probable cause great enough to question whether a Grand Jury issued an indictment against him, and with the indictment that appeared before the Court there was evidence of its deficiencies. There was concern as to such from the beginning, where at the

12

Evidentiary Hearing the main objection of the Defense was that the Indictment may have been flawed, and that the Grand Jury proceedings were in question.

WHITE's Defense team was concerned about their client being connected to other defendants even though no evidence existed to suggest otherwise, hence the Motion to Sever, and they stated from the onset that they needed more specifics as to the charges, which were not clearly set out in the Indictment or any related documents. See EHT.13, Ins.7-16, and EHT.16, Ins.7-25, supra. In fact, in their Motion to Dismiss Indictment, the Defense team tried to present their position as to the Indictment, but they were opposed by Prosecution, who should not have done so if its Indictment was valid.

Prosecution opposed WHITE's Motion for Production and Inspection of Grand Jury Transcript, Recordings, Minutes and Reports, and the Court granted their opposition, even though WHITE had a due process right of fundamental fairness which was violated once Court denied the challenge as to the discriminatory selection of the Grand Jurors on the ground that it arbitrarily excluded members of the African-American race as a due process of law. Cf. **Peters -v- Kiff**, **407 US 493, 507, 33 L.Ed.2d 83** (1972). See also the Motion to Dismiss Indictment. (CD.#229).

Because these challenges were opposed, WHITE, in the final hour before trial, felt coersion in accepting the Plea, though Prosecution knew they'd presented a flawed indictment that would not have been found against him otherwise. Prosecution used the threat of a Life sentence to force WHITE to comply, knowing they had no grounds to base a Life sentence on. Had WHITE went to trial there was a great possibility that he would not have been found guilty of drug distribution, but as an ex-felon in an alleged conspiracy, the risk for WHITE was to great, just as the Government calculated.

In their rush to judgement, Prosecution violated several substantial rights afforded WHITE. Motivated by the illegal search and seizure of his property, based on a warrant admittedly sought without probable cause, Mr. Lang and Mr.

Stroop put things in motion that USA Tihen pushed forward unfairly, securing an indictment that was not returned on the basis of evidence which would've arisen from probable cause of WHITE's own actions, unfairly charging him with crimes actually directed towards others. If properly put before a grand jury, WHITE's role in the alleged conspiracy was no more than innuendos and implications from the testimony of Mr. Stroop to create bias and prejudice, as well as damage to WHITE's character in the Grand Jury's eye, as well as Prosecution's.

Mr. Tihen then took that opportunity, knowing that evidence was lacking, but unwilling to back out of the forfeiture of WHITE's property, and proceeded with its case, knowing District Court lacked jurisdiction to try WHITE because the Grand Jury failed to return a true bill on the charge against him. Cf. **Worrall -v- Dormire**, 2012 U.S.Dist. LEXIS 153489 (8th Cir.).

But it is Judges Noce and Hamilton who allowed the case to proceed, knowing that the Indictment and, indeed, jurisdiction itself, was in question by the Defense. "Every federal court has the inherent power to determine as a preliminary matter its own subject matter jurisdiction." **Gaines -v- Nelson (In re Gaines)**, 932 F.2d 729, 731 (8th Cir. 1991). It was obvious from the Court Docket that no complaint or information appears to preceed the Indictment, and in fact no information was given until almost 5 months after the Indictment was submitted [7-NOV-11], an indictment that obviously wasn't based on the investigation that led to that information.

With the threat of a Life sentence, WHITE had no choice but to plead out, but the Government fraudulently presented its case to get him to do so. "To constitute fear and coersion on a plea, [p]etitioner must show he was subjected to threats or promises of illegitimate action." **U.S. -v- Goodman**, 590 F.2d 705, 711 (8th Cir. 1979), cert. denied, 440 US 985, 99 S.Ct. 1801, 60 L.Ed.2d 248 (1979)(internal quotation marks omitted).

Prosecution's misconduct in WHITE's case is evident in the fact that the 'Manner and Means' section was inserted, instead of seeking further charging from the Grand Jury. It was further misconduct to present the case to the Court knowing no grand jury passed a charge against WHITE. Prosecution's actions were plain error. The plain error standard of review is designed to correct only those errors that seriously affect the fairness, integrity or public reputation of judicial proceedings, and under such standard factors to consider in assessing prejudice include the cumulative effect of any misconduct, the strength of the properly admitted evidence, and any curative actions taken by the Court. CF. **U.S. -v- Young,** 470 US 1, 15, 105 S.Ct. 1038, **84 L.Ed.2d 1** (1985); **U.S. -v- McClellon,** 578 F.3d 846, 859 (8th Cir. 2009).

But in WHITE's case there was no curation by the Court, who instead allowed the case to proceed unchecked, knowing questions as to jurisdiction had arisen. The lack of an indictment also affects personal jurisdiction, and a judgement is also void if the court lacks personal jurisdiction over the defendant, which is likely what happened in this instant. See **Printed Media Services -v- Solna Web, Inc.,** 11 F.3d 838, 843 (8th Cir. 1993). District Court, whether by lack of subject matter or in personam jurisdiction, should not have preceeded with convicting WHITE on the basis of the Indictment presented by Prosecution.

WHITE, does not waive his rights to appeal Motion Criminal Rule 35(a) in 14 days.

## CONCLUSION

For all the reasons stated above in the instant motion, motion shall be for the Lack of Jurisdiction.

15

I, Kevin White, declare under penalty of perjury that I have read and subscribe to the above, and state, that the information contained herein is true and correct to the best of my knowledge.

### Certificate of Service

This is to certify that on Aug. 27th, 2019, true and correct copies of the Ct. Criminal Rule 35(a) Motion, to Correct Sentence was deposited into the mail of the United States of America, at Yankton FPC, SD. 57078 prepaid, to the following:

Clerk of Courts
United States District Court
Eastern Division Missouri
111 S. 10th Street, RM. 3300
St. Louis, Mo. 63102


Date: August 27, 2019


Respectfully Submitted
_____
Kevin White, Pro Se
24837-044
Yankton FPC
P.O. Box 700
Yankton, SD 57078